**2014-1167**

In The

# United States Court Of Appeals

For The Federal Circuit

# INFO-HOLD, INC.,

*Plaintiff-Appellant,*

v.

# MUZAK LLC,

*Defendant-Appellee.*

**Appeal from the United States District Court for the
Southern District of Ohio in case no. 11-cv-00283,
Judge Timothy S. Black.**

_____

## NON-CONFIDENTIAL REPLY BRIEF OF APPELLANT

_____

**James L. Kwak**
**STANDLEY LAW GROUP LLP**
**6300 Riverside Dr.**
**Dublin, OH  43017**
**(614) 792-5555**

**Daniel J. Wood**
**INFO-HOLD, INC.**
**4120 Airport Rd.**
**Cincinnati, OH  45226**
**(513) 248-5600**

*Counsel for Appellant*

*Counsel for Appellant*

FORM 9.   Certificate of Interest

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____ v. _____

No. _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

_____

_____

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____

_____

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____

_____

_____

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

_____

_____

_____          _____
Date                                                      Signature of counsel

_____
Printed name of counsel

Please Note: All questions must be answered
cc: _____

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... v

I.  THE DISTRICT COURT ERRONEOUSLY DISMISSED
    THIS CASE FOR LACK OF REASONABLE ROYALTY
    DAMAGES ............................................................................................ 1

    A.  Muzak did not Meet its Burden as the Summary
        Judgment Movant ...................................................................... 1

    B.  Evidence of Record shows there is a Factual Issue as to
        Whether Info-Hold is Entitled to a Non-Zero Royalty .............. 3

        1.  The Trusonic License and Hazenfield Assignment
            are part of the record and are Sufficient to show
            that Info-Hold is entitled to a Non-zero Royalty .............. 4

        2.  Muzak's Own Expert Witness Concluded that a
            Non-Zero Royalty Rate would be Reasonable and
            that Opinion is also part of the Summary Judgment
            Record ....................................................................... 7

        3.  Reference to the "Local Rules" Reinforces that
            Summary Judgment Should not Have been
            Granted ..................................................................... 10

    C.  It was Erroneous for the District Court to Conclude that Info-
        Hold did not have any Damages Witnesses ............................ 12

    D.  The District Court Abused Discretion in Excluding the Expert
        Testimony of Robert White .................................................... 14

II. THE DISTRICT COURT'S CONSTRUCTION OF "WHEN A
    CALLER IS PLACED ON HOLD" IS INCORRECT ...................... 16

    A.  Reversal of the Claim Construction Order Requires
        Remand ................................................................................. 17

B.    Construction of "When a Caller is Placed on Hold" ...............18

    1.    The District Court's Definition is Inconsistent with the '374 Specification ....................................................18

    2.    The District Court's Definition as Urged by Muzak Excludes all Described Embodiments ...........................19

    3.    Muzak fails to Consider the Definition of the Term "when" in the Context of the Actual Claim Terms at Issue in this Appeal ....................................................21

    4.    The Language of Claim 7 is Consistent with Info-Hold's Proposed Definition............................................22

    5.    Info-Hold's Proposed Definition of "When a Caller is Placed on Hold" is Consistent with the other Claim Terms ..........................................................23

    6.    Muzak's Detailed Discussion of Continuous Loop Systems Should not be Relevant to the Meaning of "When a Caller is Placed on Hold" ...............................24

    7.    Muzak Mischaracterizes the Reexamination File History .......................................................................26

III.    THERE ARE GENUINE ISSUES OF FACT REGARDING INDUCED INFRINGEMENT ..........................................................28

    A.    Muzak Improperly Attempts to Apply the "Notice" Requirement of 35 U.S.C. §287 with the Knowledge Requirement of 35 U.S.C. §271(b) ..........................................29

    B.    The Evidence of Record Provides at Least a Question of Fact that Muzak was "Willfully Blind" ...................29

IV.    CONCLUSION ..................................................................................31

CERTIFICATE OF FILING AND SERVICE

iii

CERTIFICATE OF COMPLIANCE

CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 2 and 5 indicates a royalty rate from a confidential license agreement, the material omitted on page 6 provides confidential royalty base figures, and the material omitted on page 7 provides a confidential reasonable royalty calculation.

# TABLE OF AUTHORITIES

Page(s)

CASES

*Apple Inc. v. Motorola, Inc.*,
    2014 U.S. App. LEXIS 7757 (Fed. Cir. April 25,
    2014) ........................................................................ 1, 2, 3, 6, 12, 14, 15, 17

*Bailey v. Floyd County Bd. of Educ.*,
    106 F.3d 135 (6th Cir. 1997) ........................................................................8

*Energy Transp. Group, Inc. v. William Demant Holding A/S*,
    697 F.3d 1342 (Fed. Cir. 2012) ..................................................................15

*ForeWord Magazine, Inc. v. OverDrive, Inc.*,
    2011 U.S. Dist. LEXIS 125373 (W.D. Mich. Oct. 31, 2011) .........................8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 116 (S.D.N.Y. 1970) ........................................................12, 14

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011)...............................................................................30

*McGuire v. Mich. Dep't of Cmty. Health*,
    526 Fed. Appx. 494 (6th Cir. 2013) .............................................................8

*Novosteel SA v. U.S.*,
    284 F.3d 1261 (Fed. Cir. 2002) .................................................................6, 8

*R.C. Olmstead, Inc. v. CU Interface, LLC*,
    657 F. Supp. 2d 899 (N.D. Ohio 2009) .........................................................9

*Siegler v. Am. Honda Motor Co.*,
    532 F.3d 469 (6th Cir. 2008) ........................................................................9

STATUTES

35 U.S.C. §271(b) ...........................................................................29, 30

35 U.S.C. §284 .................................................................................1, 2

35 U.S.C. §287 .................................................................................. 29

RULES AND OTHER AUTHORITIES

Fed. R. Civ. P. 26 ..............................................................................14

Fed. R. Civ. P. 56 ..............................................................................8

STANDING ORDER GOVERNING CIVIL MOTIONS FOR
      SUMMARY JUDGMENT, TIMOTHY S. BLACK, UNITED
      STATES DISTRICT JUDGE, S.D. OHIO ...............................10, 11

I.   THE DISTRICT COURT ERRONEOUSLY DISMISSED THIS CASE
     FOR LACK OF REASONABLE ROYALTY DAMAGES

A.   Muzak did not Meet its Burden as the Summary Judgment Movant

When infringement is proven, there is a presumption – in light of §284 – that

the patentee is entitled to some form of damages.  *Apple Inc. v. Motorola, Inc.*,

2014 U.S. App. LEXIS 7757 *93 - *94 (Fed. Cir. April 25, 2014).  On summary

judgment, as the case is here, "a judge may only award a zero royalty for

infringement if there is no genuine issue of material fact that zero is the only

reasonable royalty."  *Id.* at *97.  The party seeking summary judgment of no

damages has the burden of demonstrating "the record is uncontroverted that zero is

the only reasonable royalty."  *Id.* at *99.  If the patentee "raises a factual issue

regarding whether it is due any non-zero royalty, summary judgment must be

denied."  *Id.* at *97.

Muzak has not met its burden of demonstrating, as the summary judgment

movant, that the record is uncontroverted that zero is the only reasonable royalty.

As was the case in *Apple Inc.* Muzak has provided no evidence or argument to

support a zero royalty.  There is nothing in the record suggesting that Info-Hold

would have accepted no payment for Muzak's infringement.  Nor is there any

evidence that, at the time of infringement, Info-Hold concluded the patent-in-suit

had no value.  To the contrary, the record proffered by Info-Hold establishes that

1

CONFIDENTIAL MATERIAL OMITTED
SUBJECT TO DEFAULT PROTECTIVE ORDER

near the time of the hypothetical negotiation the '374 Patent was licensed to

Trusonic for a ▓▓▓▓▓ royalty rate (the "Trusonic License")[1] and the inventor

assigned his rights to the '374 Patent for a 5% royalty (the "Hazenfield

Assignment")[2]. The record also shows that Muzak's own expert witness Mr. Paris

found that Info-Hold would be entitled to a non-zero royalty.[3] In seeking summary

judgment, Muzak did not so much as assert that the record in this case is

uncontroverted that zero is the only reasonable royalty. [4]

Muzak incorrectly argues that the district Court properly granted summary

judgment in this case because *Apple Inc.* allegedly establishes that 35 U.S.C. §284

permits for summary judgment of no reasonable royalty damages when the record

on summary judgment contains insufficient evidence from which a reasonable

royalty may be determined.[5] In making this argument, Muzak not only incorrectly

concludes that the record of this case contains insufficient evidence of reasonable

royalty damages, but it also inappropriately blurs this Court's discussion in *Apple

Inc.* of when it may be acceptable for a jury to award no damages in a patent

infringement suit with the Court's discussion of when a court may enter a ruling of

---

[1] A4792-4837
[2] A4788-4789
[3] A4543;A4664-4711; *See* A4216-4227; A4240-4245; A4542-4545
[4] *See* A3782-3786.
[5] Doc. 36, 16–20

a zero royalty award on summary judgment.[6]  *See Apple Inc.* at \*96-\*97.  Muzak

ignores the portion of *Apple Inc.* which explains that in the case of summary

judgment, the movant must demonstrate the record is uncontroverted that zero is

the only reasonable royalty.  *See Id.* at \*97-\*99.  The District Court's decision in

this case, which found that summary judgment of no reasonable royalty was

warranted because Info-Hold did not present evidence to make a *prima facie* case

of reasonable royalty damages, was in error.[7]  *See Id*. at \*96-\*100.

      B.    Evidence of Record shows there is a Factual Issue as to Whether Info-Hold is Entitled to a Non-Zero Royalty

Though Info-Hold was under no obligation to do so, as Muzak's Motion for

Summary Judgment was legally insufficient on its face[8], Info-Hold did respond to

Muzak's Motion for Summary Judgment with documents that show Info-Hold is

entitled to reasonable royalty damages.[9]

---

[6] Doc. 36 at 17.

[7] A88-90.

[8] In addition to what has been discussed in Section I(A), Muzak's Motion for Summary Judgment was legally insufficient on its face because it merely contended that after excluding Info-Hold's expert on damages, Info-Hold had no witness to present evidence of a reasonable royalty.  The Motion did not address Info-Hold's ability to present damages evidence through documents or Muzak's witnesses.

[9] A4542-4545

1.   The Trusonic License and Hazenfield Assignment are part of
the Record and are Sufficient to Show that Info-Hold is Entitled
to a Non-zero Royalty

The Trusonic License[10] and Hazenfield Assignment[11] provide evidence of a

reasonable royalty rate and establish that Info-Hold believed the patent-in-suit had

value at the time of the hypothetical negotiation such that it would not have settled

for a zero royalty.  In its Response brief, Muzak concedes that these documents are

both part of the summary judgment record and are "properly before the court."[12]

While Muzak states that these documents are not relevant, Muzak does not contest

Info-Hold's assertion that Muzak waived its objections to the admissibility of these

documents by failing to object to them at the district court level.[13]  Meanwhile, the

District Court's decision on summary judgment is completely silent as to the

Trusonic License and Hazenfield Assignment.[14]  Certainly, the District Court did

not exclude them for lack of relevance.

The Trusonic License and the Hazenfield Assignment are relevant.  Info-

Hold has always asserted – and it specifically asserted to the District Court – that

the Hazenfield assignment and Trusonic License are at least marginally relevant to

the reasonable royalty rate to which it is entitled because they are an assignment of

---

[10] A4792-4837
[11] A4788-4789
[12] Doc. 36 at 32, 34.
[13] *See* Doc. 20 at p. 25.
[14] A88-90.

CONFIDENTIAL MATERIAL OMITTED
SUBJECT TO DEFAULT PROTECTIVE ORDER

and license to practice the patent-in-suit.[15]  In addition to being directed at the

patent-in-suit, the Trusonic License and Hazenfield Assignment were both

executed in close proximity to the hypothetical negotiation at issue in this case. [16]

Muzak's Response complains that the Trusonic License does not "state a

royalty percentage as such."[17]  While improperly asserted for the first time here on

appeal, the contention is also incorrect as the ███████ percent royalty rates

established by the Trusonic License are spelled out in Schedule B[18] of the

agreement in Sections V.D and V.E respectively[19]:



Info-Hold provided the District Court with evidence of a reasonable royalty rate in

this case – any questions regarding how relevant the cited evidence is to

---

[15] A4545; A4699-700.
[16] The hypothetical negotiation date in this case is either prior to April of 2008 (A4698) or the fall of 2008 (A4578).  The Hazenfield Assignment and Trusonic License were executed in October of 2007 and September of 2009 respectively (A4788-4789; A4792).
[17] Doc.36 at 26.
[18] A4833-4837
[19] A4837; Doc.20 at p. 19 note 62 (citing to Trusonic license).

CONFIDENTIAL MATERIAL OMITTED
SUBJECT TO DEFAULT PROTECTIVE ORDER

calculating reasonable royalty damages are for the jury to answer. *Apple Inc.* at

*56 -57.

Acknowledging that the Trusonic License and Hazenfield Assignment are

"properly before the court," and essentially conceding that the documents establish

evidence of a royalty rate, Muzak tries to shift the Court's focus to whether these

documents provide any evidence of royalty base. [20] But, neither Muzak's Motion

for Summary Judgment nor its Reply in Support thereof so much as mention

royalty base or Info-Hold's alleged inability to prove it and Muzak's attempt to

make this argument on appeal should be rejected.[21] *See Novosteel SA v. U.S.*, 284

F.3d 1261, 1274 (Fed. Cir. 2002). However, as discussed below, there is evidence

of the royalty base in the record.[22]

---

[20] Doc.36 at 3, 32 – 35.

[21] A3780-3786; A4927-4935. Muzak never mentioned the royalty base until
responding to Info-Hold's Motion for Reconsideration.

[22] For example, the Muzak Financial Documents (A4747-4786) provide such
evidence. In its Response brief, Muzak incorrectly states that these business
documents were not relied upon or cited by Info-Hold in its Appeal brief. Doc. 36
at pp. 24 – 25. A review of Info-Hold's Appeal brief at p. 22 and footnotes 74
through 76 shows where Info-Hold specifically discussed and cited to the Muzak
financial documents which provided Mr. Paris evidence of the royalty base in this
case. Mr. Paris testified that these rolling base reports were business documents of
Muzak. A4229-4230; A4682 (referencing MUZ7074). These documents, which
were also provided to the Court by Info-Hold in opposing summary judgment, also
provide evidence of the royalty base. The report and deposition testimony of Mr.
Paris similarly provide royalty base evidence. The evidence shows the royalty
base for this case is between ████████████████████████ .

CONFIDENTIAL MATERIAL OMITTED
SUBJECT TO DEFAULT PROTECTIVE ORDER

In responding to Muzak's Motion for Summary Judgment, Info-Hold provided the Court with the Trusonic License and Hazenfield Assignment which are of record and demonstrate that Info-Hold is due a non-zero royalty. This Court should reverse the District Court's grant of summary judgment.

2.    Muzak's Own Expert Witness Concluded that a Non-Zero Royalty Rate would be Reasonable and that Opinion is also part of the Summary Judgment Record

In addition to the Trusonic License and Hazenfield Assignment, Info-Hold also responded to Muzak's Motion for Summary Judgment by citing to the opinion of Muzak's expert on damages, Mr. Paris.[23]  In that opinion, Mr. Paris analyzed a variety of evidence[24] and concluded that a hypothetical negotiation in this case would result in a royalty rate of 1% - 2%.[25]  Based on these rates, Mr. Paris concluded that Info-Hold would be entitled to at least ███████ for Muzak's infringement through 2012.[26]

Muzak asserts that it objected to Info-Hold's citation to the expert report of Mr. Paris under the rules against hearsay.[27]  Where the nonmovant on summary judgment bears the burden of proof at trial on a dispositive issue, the nonmovant is not required to respond to summary judgment with evidence in a form that would

---

[23] A4543
[24] A4699-4700; *See* A4709; A4743; A4725-4738.
[25] A4708-4709
[26] *Id.*
[27] Doc.36 at 22.

be admissible at trial but may instead rely on evidence that may be reduced to admissible form. *See McGuire v. Mich. Dep't of Cmty. Health*, 526 Fed. Appx. 494, 496 (6th Cir. 2013) citing *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997). Rule 56 as revised in 2010 "clearly contemplates that the proponent of evidence will have the ability to address the opponent's objections." *ForeWord Magazine, Inc. v. OverDrive, Inc.*, 2011 U.S. Dist. LEXIS 125373 *4 - *5 (W.D. Mich. Oct. 31, 2011); *see also Novosteel SA*, 284 F.3d at 1274. Muzak fails to inform the Court that even if its objection to Info-Hold's citation of Mr. Paris' report had been proper, Info-Hold did not have the opportunity to respond to the objection until its Motion for Reconsideration.[28] In that Motion, Info-Hold *did* cite to the deposition transcript of Mr. Paris previously filed with the Court and explained that within his deposition Mr. Paris concluded that a royalty of 1 – 2% would be reasonable in this case and that he utilized the Muzak financial documents that had been provided to the Court by Info-Hold.[29] Info-Hold did not discuss the royalty base evidence provided by Mr. Paris because *Muzak had not raised the royalty base issue* in their summary judgment motion.[30] Muzak's

---

[28] This is true of all of Muzak's alleged objections.

[29] A4975(citing to deposition testimony of Mr. Paris); *see* Br. at pp. 20 – 21note 69 for citation to relevant sections of Mr. Paris' deposition

[30] Mr. Paris' opinion as cited by Info-Hold does provide Royalty base evidence. Specifically at pp. 19-20, 40 of his expert report (A4682-4683; A4703) and in Exhibits E & G thereto (A4725-4738; A4743) as well as in his deposition testimony (A4279-4285; A4324-4326).

8

assertion that Info-Hold did not cite to the deposition testimony of Mr. Paris in its Motion for Reconsideration is not true.[31]  In *Siegler v. Am. Honda Motor Co.*, 532 F.3d 469, 479-481 (6th Cir. 2008), cited by Muzak to support the notion that the District Court properly disregarded the opinions of Mr. Paris' report as hearsay, the Court found it was error to consider unsworn expert reports in ruling on summary judgment when the expert's sworn testimony adopting the opinions of the report had not previously been filed with the Court.  *See id.* at 480.  *Siegler* is thus critically distinguished from this case.

Info-Hold has not found a case where the Sixth Circuit has held that the sworn deposition testimony of an expert witness retained by the other party to offer testimony at trial is unavailable as evidence on summary judgment.  The case cited by Muzak in support of the proposition that a party may not call another party's expert witness is not on point and deals with a party's ability to call an expert that has been retained by the other party as a non-testifying expert (or an expert that has been designated as non-testifying).  *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 899, 904 (N.D. Ohio 2009).  Muzak has not designated Mr. Paris as a non-testifying witness and the Court has not stricken his testimony.  There is no basis for concluding his testimony on reasonable royalty will not be admitted at trial.

---

[31] *Compare* Doc. 36 at p. 31 *with* A4975.

By citing to the expert opinion of Mr. Paris, which was adopted and explained by Mr. Paris in his sworn deposition testimony previously filed with the Court, Info-Hold provided the court with additional, admissible evidence of a reasonable royalty rate.

### 3. Reference to the "Local Rules" Reinforces that Summary Judgment Should not Have been Granted

To establish that the District Court did not need to consider certain evidence cited by Info-Hold in Responding to Muzak's Motion for Summary Judgment, Muzak argues that under a "local rule" a party opposing summary judgment must cite to "a document, an affidavit, or other evidence in the record that is admissible at trial to support every contention that a disputed issue of material fact exists." Muzak's allegation is not supported.[32]

The rule being referenced by Muzak is a standing order of Judge Timothy S. Black.[33]  The relevant standing order was not cited by the Court as a basis for granting Muzak's Motion for Summary Judgment although the Court did reference it in denying Info-Hold's Motion for Reconsideration.[34]  There the Court suggests that the Order – in some instances – requires the citation of evidence by the summary judgment opponent that may be reduced to admissible form *not* citation

---

[32] Doc.36 at 21-22.
[33] *See* http://www.ohsd.uscourts.gov/judges/fpblack.htm.
[34] A97.

to evidence in a form that is admissible.[35]  The standing order reinforces the error of the District Court.  Specifically, it creates a framework under which the party opposing summary judgment, only in denying the undisputed facts specifically asserted by the moving party in a document entitled Proposed Undisputed Facts, must cite to "contrary evidence that would be admissible at trial."[36]

Muzak did not even provide Info-Hold with a document entitled Proposed Undisputed Facts as is required by the relevant Order.[37]  Further, the allegedly undisputed facts that were put forward by Muzak within its memorandum in support were about the alleged lack of Info-Hold witnesses that could testify as to a reasonable royalty.[38]  Muzak did not assert, for example, that it was undisputed that there was no admissible evidence of reasonable royalty damages or that the record establishes that zero is the only reasonable royalty rate in this case.[39]  Accordingly, there was no opportunity for Info-Hold to deny such an assertion within its Response to Proposed Undisputed Facts or for Info-Hold to present a coordinating citation to reasonable royalty evidence.  The District Court's Order granting summary judgment of no reasonable royalty damages was erroneous and should be reversed.

---

[35] A97.

[36] *See* http://www.ohsd.uscourts.gov/judges/fpblack.htm.

[37] A3780-3782.

[38] *Id.*

[39]*Id.*

C.   It was Erroneous for the District Court to Conclude that Info-Hold did not have any Damages Witnesses

The District Court's Order on summary judgment should also be reversed in light of its incorrect conclusion that Info-Hold had "no potential damages witnesses… to call at trial whatsoever."  As recently clarified in *Apple Inc.* a variety of evidence may support a patentee's entitlement to a reasonable royalty. *See Apple Inc.*, \*57-\*58; *See also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 116, 1120 (S.D.N.Y. 1970).

Mr. Hazenfield and Mr. Mason were disclosed by Info-Hold as individuals having a variety of relevant information.[40]  Those subjects of information encompass facts that bear on the reasonable royalty rate.  For example, Mr. Hazenfield has personal knowledge of the Trusonic License and Hazenfield Assignment and may testify accordingly.[41]  These facts were specifically asserted by Info-Hold in opposing summary judgment.[42]  In ruling on summary judgment, the District Court concluded that if Info-Hold were to present Mr. Mason or Mr. Hazenfield "as witnesses on reasonable royalty damages to testify to a hypothetical negotiation their testimony would be excluded…"  under rules pertaining to expert

---

[40] Doc.20 at pp. 26 – 30.
[41] A4792-4837; A4788-4789; A4402-4403 (Hazenfield Declaration); A4410-4413 (Hazenfield Deposition).  Like the Paris deposition transcript, the Hazenfield Declaration and Hazenfield Deposition were cited by Info-Hold in its Motion for Reconsideration (A4970; A4974-4977).
[42] A4544-4545.

12

testimony.[43]  In result, the Court found that Info-Hold lacked damages witnesses "leaving it with no admissible evidence on reasonable royalty damages."[44]  The District Court erroneously concluded that because a lay witness could not testify to a hypothetical negotiation, they could not provide any lay testimony relating to damages.

Muzak argues that two additional, independent bases (an alleged lack of testimony in the record and an alleged failure by Info-Hold to update its interrogatory responses) support the District Court's decision to "exclude" the testimony of Mr. Mason and Mr. Hazenfield, but this is not the case.[45]  First, no testimony was excluded by the Court.[46]  Further, the additional reasons (which were not even articulated until the Court's order on Info-Hold's Motion for Reconsideration) do not justify the Court's Order.  Info-Hold explained in opposing summary judgment that Mr. Hazenfield could testify as to the contents of the Trusonic License and Hazenfield Assignment which he executed.  These documents are admittedly part of the summary judgment record and provide the Court with relevant testimony.  Further, these documents had been provided to

---

[43] A88

[44] A89. This is not an issue pertaining to the exclusion of testimony as is asserted by Muzak and should not be addressed under an abuse of discretion standard.

[45] Doc.36 at 35 – 36.

[46] A89.

Muzak as part of discovery.[47]  A party is only required to update discovery
responses to the extent "the additional or corrective information has not otherwise
been made known to the other parties during the discovery process."  Fed. R. Civ.
P. 26.  Muzak obtained the Trusonic License and Hazenfield Assignment which
were executed by Mr. Hazenfield and even deposed Mr. Hazenfield as to
reasonable royalty damages –  it can't assert it was unaware Mr. Hazenfield had
knowledge pertaining to the royalty issue.[48]   The District Court had no basis for
concluding Info-Hold had no damages witnesses.

> D.    The District Court Abused Discretion in Excluding the Expert
>        Testimony of Robert White

The *Apple Inc.* decision also clarified the standard for excluding expert
testimony from trial.  *Apple Inc.*, *53-*59.   The gatekeeping role of the judge "is
limited to excluding testimony based on unreliable principles and methods" which
"is particularly essential in the context of patent damages."  *Id.* at *56-57.  In this
case, the district court exceeded its proper role as gatekeeper and improperly
excluded Info-Hold's expert on damages Robert White.  Mr. White, a CPA with
numerous years of experience performing financial work in the music-on-hold
industry, utilized the *Georgia-Pacific* factors to determine a reasonable royalty in

---

[47] A4792-4837; A4788-4789
[48] A4412-4413.

this case.[49]  Mr. White's reliance on Info-Hold and Muzak witnesses for

information on damages information was reasonable.  While Mr. White's expert

report discusses the 25% rule it is specifically presented only as an "alternative"

method to determining a reasonable royalty figure.[50]  *See Energy Transp. Group,*

*Inc. v. William Demant Holding A/S*, 697 F.3d 1342 (Fed. Cir. 2012)(reference to

the 25 percent rule does not necessarily indicate an expert's opinion on reasonable

royalty is unreliable if the expert also references other, reliable factors).  Further

Mr. White specifically stated that he did consider items such as the Trusonic

License, and the 10% royalty rate Muzak charges its franchisees in opining on a

reasonable royalty rate.[51]  Therefore, the District Court did much more than "reject

Info-Hold's arguments" pertaining to these matters as is asserted by Muzak in its

Response brief – the District Court instead made its own determination as to

whether Mr. White's testimony was correct and weighed the facts considered by

Mr. White – which was an abuse of discretion.  *See Apple Inc.* at *53-59.[52]

In its Response, Muzak asserts that Info-Hold "did not address an

independent basis for the District Court's exclusion of Mr. White's opinions",

---

[49] A3875-3885.

[50] A4580; A3879; A4011, 61:21-63:01; A4039, 173:06-176:18

[51] A3879-3880; A4011, 61:21-63:01; *See also* evidence cited at Doc.20 at p. 35, note 110.

[52] Reversing the exclusion of Mr. White's testimony will require a reversal of the District Court's summary judgment order of no reasonable royalty damages.

specifically Mr. White's utilization of the entire market value rule, allegedly

waiving Info-Hold's right to appeal the exclusion of Mr. White's reports. But, the

District Court's exclusion of Mr. White's testimony based on the entire market

value rule was addressed by Info-Hold in the portion of its appeal brief discussing

the undue weight the District Court placed upon Mr. White's reliance on Info-Hold

personnel as a source of information. The District Court found that Mr. White

relied upon Info-Hold personnel to conclude that convoyed sales[53] should be

included in the royalty base and that he failed to independently verify the

information.[54] As explained by Info-Hold, in striking White, the District Court

failed to distinguish the issue of whether figures relied upon and assumptions made

by an expert are ultimately established by the evidence produced at trial from the

utilization of untested methodology: the latter of which can result in a finding of

inadmissibility.[55] Further, application of the entire market value rule goes only to

the royalty base to which a reasonable royalty rate is applied. Excluding the

entirety of Mr. White's testimony for application of the entire market value rule

would constitute an abuse of discretion.

II.   THE DISTRICT COURT'S CONSTRUCTION OF "WHEN A CALLER IS
      PLACED ON HOLD" IS INCORRECT

---

[53] Mr. White never utilized the terminology entire market value rule but his report on damages does refer to "convoyed sales".
[54] A86-87.
[55] Doc. 20 at p. 34.

A.      Reversal of the Claim Construction Order Requires Remand

Muzak incorrectly contends that the Court need not reach the issues of inducement or claim construction if it affirms the summary judgment decision of no reasonable royalty damages.  Muzak's position is wrong as the District Court's finding of summary judgment of no reasonable royalty (and resulting final judgment) only applies to those claims of the '374 Patent that were in the case at the time of the summary judgment order – it does not apply to those claims that were previously eliminated from the case based on the District Court's incorrect claim construction.  Reversal of the claim construction in this case will reopen the case as to those claims that were eliminated and remand will be needed for a new damages analysis with consideration of those claims.  *See Apple Inc.*, at *59-*64 (finding remand necessary for further damages analysis to consider the full scope of infringement resulting from the corrected claim construction).

The District Court's incorrect claim construction resulted in a stipulated finding of noninfringement as to a whole class of claims from the '374 Patent relating to "on-hold" systems.[56]  Because the District Court's Claim Construction Order (and associated Stipulation of Noninfringement) was issued well before expert reports on damages were due, a reversal of the claim construction requires

---

[56] (A23, Claims 7-11, 14-18, 20-22, 26-29, 37 and 38). These claims hereinafter referred to as the "on-hold claims".

remand for further proceedings with the "on-hold claims" back in the case.[57]  For example, remand will allow supplemental expert reports on damages to be prepared taking into consideration these claims, including determining the reasonable royalty damages for these claims.  Contrary to Muzak's contentions, remand is proper upon a reversal of the claim construction issues in this case.

B.    Construction of  "When a Caller is Placed on Hold"

1.    The District Court's Definition is Inconsistent with the '374 Specification

Muzak has failed to explain how its proposed definition of "when a caller is placed on hold" as adopted by the District Court is consistent with the specification and invention of the '374 Patent which is to provide messages (*e.g.*, songs and announcements) to callers during the time the callers are placed on hold and waiting for assistance.   For example, claim 7 of the '374 Patent recites, in part:

> for playing selected ones of said messages through an output of said message playback device <u>when a caller is placed on hold</u>;

(A145, '374 Patent, claim 7)  By simply plugging Muzak's definition into claim 7, it is clear that Muzak's definition is inconsistent with the specification and invention of the '374 Patent to play messages to the caller during the time the caller is placed on hold in the telephone system and awaiting assistance.  Using

---

[57] (A11, A23-A25; A3861-A3862)

Muzak's definition (as adopted by the Court) renders a recited invention where messages are only played during the momentary act of placing the caller on hold.

> 2. The District Court's Definition as Urged by Muzak Excludes all Described Embodiments

In Info-Hold's opening brief, Info-Hold cites to the intrinsic evidence of record (the specification of the '374 Patent – not merely attorney argument as Muzak alleges), that describes how the embodiments of the '374 Patent operate.[58] Info-Hold explained, by citation to the '374 Patent, that in every embodiment disclosed, the control signals sent from the remote server control when the message playback devices start the playback of messages.[59] There was no embodiment described where the message playback device can begin playback of messages at the momentary act of placing the caller on hold.[60] There are no embodiments described where the message playback device even knows the exact moment that a caller is going to call into the telephone system and be placed on hold.[61]

The claims even explicitly recite that the control signals start message playback – not the act of placing a caller on hold.[62] For example, the operator at the remote server may set the control signal settings for message playback during

---

[58] (Doc. 20, pgs. 41-50)

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] (A145)

store hours of 6 a.m. and 8 p.m.  If and when a caller does call into the telephone system at random times during store hours, message playback will already be occurring and the telephone system will merely place the caller on hold into the message that happens to be playing at that time (after that message is done, the message playback device will access the next message in the playlist sequence and play the message to the output *during* the time the caller is placed on hold).

Muzak fails to point to any embodiment in the '374 Patent, that can begin message playback "at the moment" of placing the caller on hold.  Muzak's only response is that some of the independent claims (7, 17) recite limitations to the message playback devices "communicating with a respective telephone system."[63] These claims recite the ability to communicate messages from the playback device to the telephone (MOH) system for playback.  There is absolutely no description in these claims cited to by Muzak (or in the Patent's specification) that explains that this communication is a two-way communication, and that the telephone system is configured to talk to the message playback device to control the playback of messages "at the moment" of placing the caller on hold.

Muzak essentially conjures up a new way, not disclosed in the '374 Patent, that the system of the '374 Patent *might be* configured so that the message playback device could playback messages "at the moment" of placing a caller on

---

[63] (Doc. 36, pg. 54)

hold.[64]  Specifically, Muzak theorizes that there is nothing "that prevents" the

telephone system from alerting the server that then sends a control signal to the

message playback device.  Muzak is engaging in two levels of improper claim

construction – Muzak reads technical details into the specification that are not

there and then reads those technical details into the claims.[65]  The District Court's

definition of "when a caller is placed on hold" is improper as it excludes all

embodiments described in the '374 Patent.

>         3.    Muzak fails to Consider the Definition of the Term "when" in
>               the Context of the Actual Claim Terms at issue in this Appeal

The word "when" can take on multiple meanings *depending on how it is*

*used in a sentence*.   At issue here is the meaning of "when" within the phrase

"when a caller is placed on hold."  In its Response, Muzak essentially argues that

because the word "when" is used in other places in the '374 patent to mean "at the

moment" it must have the same meaning in the phrase "when a caller is placed on

hold."  For example, Muzak cites to claims 13 and 19 which also recite "when." [66]

But the relevant portion of these claims relate to an *operator of the system* picking

the time of day when the messages are to start playing and the time controls are to

be sent to the message playback device.  Within these claims "when" may mean

---

[64] (Doc. 36, pgs. 56-57)

[65]  *Id.*

[66] Doc. 36, pgs. 43-44.

"at the moment", but it is clear from a reading of the specification that "when" has different meanings in different contexts of the patent and Muzak cannot successfully conflate every occurrence of the word "when" in the '374 patent to mean "at the moment."  In other words, just because the system allows an operator to select the time that messages commence playing or the time control signals are transmitted, does not mean that the system can be controlled to begin message playback "at the moment" of placing a caller on hold.

>     4.     The Language of Claim 7 is Consistent with Info-Hold's
>            Proposed Definition

Muzak cites to the language of claim 7 in support of its proposed definition. The portion of claim 7 cited to by Muzak merely requires the message playback devices to be programmable to access a message from storage and to provide that message to the output of the message playback device when a caller is placed on hold.[67]   Using Info-Hold's proposed definition of "when a caller is placed on hold" to mean "during the time a caller is placed on hold" is entirely consistent with the language of this claim, the other claims, the specification, and the invention of the '374 Patent.  In other words, in claim 7, the system is

---

[67] These excerpts from Claim 7 only require that the system be programmable to access and play a message during the time a caller is placed on hold and do not exclude a system that allows a caller to be placed on hold in the middle of a message being played.

programmable to access and play messages (*e.g.*, songs, announcements) during the time the caller is placed on hold.

     5.    Info-Hold's Proposed Definition of "When a Caller is Placed on Hold" is Consistent with the other Claim Terms

Muzak argues that the definitions of "message" and "playlist" agreed upon in this case require that these messages and playlists be "played from its identified beginning at the moment of placing a caller on hold."[68]  Nothing is farther from the truth.  The definition agreed upon for "message" for example is a "separate unit of audio and/or visual information for playback having an identifiable beginning and end."[69]  As discussed, a "message" can be a song or advertisement.

This definition of message merely states that the message has an identifiable beginning – the definition does not require the *playing* of the message from the identifiable beginning at the moment of placing the caller on hold.  Just because a song has an identifiable beginning does not necessarily mean that a caller put on hold by the telephone system has to hear the song from the beginning – as discussed, many telephone systems are adapted to start the playing of messages and then subsequently "drop" the caller into the middle of a song upon placing the caller on hold.

---

[68] Doc. 36, pg. 45-46
[69] Doc. 36, pg. 45-46

Muzak's reasoning is circular. Muzak assumes that "when a caller is placed on hold" must mean "at the moment" of placing a caller on hold and then concludes that because the playing of messages must start at the moment a caller is placed on hold, that the message must be played from its beginning.[70]

6. Muzak's Detailed Discussion of Continuous Loop Systems Should not be Relevant to the Meaning of "When a Caller is Placed on Hold"

First, Muzak mischaracterizes Info-Hold's statements relating to continuous loop systems. Info-Hold has never contended that the '374 Patent "only supports continuous loop playback," as Muzak contends.[71] Info-Hold merely contends that the '374 Patent does *not exclude* continuous loop systems.[72] Clearly, the '374 Patent describes songs and other messages stored in digitized form on a CD that allows the user to select any song stored on the CD for playback, in any sequence, including in a continuous loop sequence or not.[73] At most, the Applicant of the '374 Patent criticized endless loop *cassette tape* systems – not continuous loop systems in general.

---

[70] *Id*. at pg. 44-46.
[71] Doc. 36, pg. 49, pg. 55 (fn. 29)
[72] For example, in Muzak's claim construction briefing, Muzak argued "the claims of the '374 Patent must be read to exclude playing messages on an endless loop system." (A1432)
[73] Doc. 20, pgs. 44-47; 50-52. Digitized songs stored on a CD can still play in a continuous loop or predetermined sequence even though the songs are not stored on an analog tape.

Secondly, Muzak's detailed discussion of continuous loop systems is irrelevant. The only reason the topic of continuous loop systems is even in this discussion is because Muzak itself argued to the District Court that statements made by the Applicant criticizing continuous loop *cassette tape* systems leads to a definition of "when" to mean "at the moment." The District Court adopted Muzak's position which explains Muzak's focus on the topic.

This convoluted argument was proposed by Muzak in its claim construction briefing. Muzak essentially argued that because continuous loop systems put callers on hold in the middle of a message and because the applicant criticized continuous loop systems, the '374 Patent must only cover systems that begin message playback at the moment of placing a caller on hold.[74] But, the argument is flawed as the Applicant never criticized continuous loop systems in general. The Applicant only criticized continuous loop *cassette tape* systems and only because the tapes wear down, often malfunction, and the messages stored on the tapes cannot be modified because the tape has to be moved forward and backward to select messages.[75] The Applicant never criticized continuous loop systems because they drop callers into the middle of a message –this aspect of continuous

---

[74] (A1426-A1435; A6-A8) (citing to reexamination history, A1534-A1540)
[75] (A129, A138, '374 Patent, col. 1:19-60; col. 19:60-64) Muzak points to statements made in the '374 Patent against prior systems with integrated chips, however these statements also do not illuminate on whether "when" means "during" or "at the moment."

loop cassette tape systems was never even discussed.[76] The entire premise on which the District Court predicated its narrow definition of "when a caller is placed on hold" is incorrect.[77]

7. Muzak Mischaracterizes the Reexamination File History

Muzak fails to point to any section of the reexamination history that, clearly or otherwise, expresses an intent to limit the term "when a caller is placed on hold" to mean "at the moment a caller is placed on hold." Muzak mischaracterizes the reexamination file history by contending "Info-Hold emphasized that signals are generated when a caller is placed on hold."[78] (Muzak citing to reexamination statements referring to independent claims 22, 26, 30, 32, 33 and 34).[79] But, Muzak mistakenly contends that the term "when a caller is placed on hold" modifies the step of "generating control signals" in these claims[80] when the term actually modifies the words "to play said selected messages." *See, e.g.*, claim 7,

---

[76] *Id.*

[77] (Doc. 20, pgs. 41-50) Muzak also contends that "the continuous loop system that Info-Hold argues must be practiced by the invention is not consistent with the emphasis of its patent." (Doc. 36, pg. 50) Again, Muzak mischaracterizes Info-Hold's position. Info-Hold has never contended that the '374 Patent is limited to just continuous loop systems. Secondly, the embodiments described in the '374 Patent are consistent with the sequencing of messages, prioritizing order of playback and controlling when messages will be played because the '374 Patent describes digitized messages stored on a CD (not analog cassette tape systems) which allows all these features.

[78] (Doc. 36, pg. 58)

[79] *Id.*

[80] (Doc. 36, pg. 59)

reciting "*for playing selected ones of said messages through an output of said message playback device when a caller is placed on hold*" providing evidence of how to construe similar terms in claims 22, 26, 30, 32, 33 and 34.

Furthermore, upon review of these claims it becomes clear that these claims (and associated statements made in the reexamination) are completely consistent with Info-Hold's proposed definition of "when a caller is placed on hold" to mean "during the time a caller is placed on hold" and not a momentary act. For example, claim 22 recites a method step of:

> generating a control signal using said computer for said message playback device corresponding to said selected remote site to play said selected message when a caller is placed on hold[81]

Again, consistent with Info-Hold's position, this claim recites an invention where the control signals from the remote computer are sent to the message playback device to control message playback and that the playback occurs *during the time* a caller is placed on hold. There is nothing in the claims or the reexamination file history that states control signals are generated "at the moment" of placing a caller on hold.

Even assuming the claim term "when a caller is placed on hold" modifies the step of "generating control signals" as urged by Muzak, Muzak again engages in circular reasoning by presupposing that "when" as used in these claims and in the

---

[81] (A146, '374 Patent, claim 22)

reexamination file history means "at the moment" in an attempt to argue for their definition. Muzak is engaging in logical fallacy by beginning with what they are trying to end with. Nowhere in the '374 Patent or associated file histories is the word "at the moment" even discussed, much less in association with the claim term at issue.

## III. THERE ARE GENUINE ISSUES OF FACT REGARDING INDUCED INFRINGEMENT

Muzak fails to dispute Info-Hold's evidence of inducement. Accordingly, the evidence is undisputed that Mr. Zendan, General Counsel of Muzak, was apprised of the '374 Patent in a phone conversation where he stated that Muzak had products that control the playback of music from remote means.[82]  During that conversation, he also stated he would take a closer look at the '374 patent.[83] Muzak has not provided any evidence that it conducted or obtained an infringement analysis of the '374 Patent. Instead, Muzak continued to make, sell, and otherwise enable and aid its customers in using the accused products and services (even after the filing of the Complaint in this case). This evidence provides, at least, a genuine issue of fact on induced infringement.

---

[82] (Doc. 20, pgs. 54-62)
[83] Contrary to Muzak's contentions, Info-Hold did cite to, and discuss, the telephone conversation with Mr. Zendan in the underlying briefing. (A3185; A2797-A2798)

A.   Muzak Improperly Attempts to Apply the "Notice" Requirement of 35 U.S.C. §287 with the Knowledge Requirement of 35 U.S.C. §271(b)

Muzak cites to various discovery responses of Info-Hold arguing they establish that Info-Hold cannot prove its inducement claims.[84]  But these discovery responses are not dispositive of inducement as they relate to the actual notice of infringement required by the patent marking statute.[85]  Further, the discovery responses cited to by Muzak merely evidence certain knowledge and actions of Info-Hold (the patent owner).  The proper focus for an inducement claim is not on what Info-Hold knew or should have known, but rather on what Muzak knew and what Muzak did in light of that knowledge.[86]

B.   The Evidence of Record Provides at Least a Question of Fact that Muzak was "Willfully Blind"

Under the "willfully blind" standard of inducement, Info-Hold does not have to prove that Muzak had knowledge that "the induced acts constitute patent infringement."[87]  Inducement can instead be shown by knowledge of the patent with evidence demonstrating that the accused was willfully blind to the infringement.  Muzak fails to provide evidence disputing that after Muzak was

---

[84] (Doc. 36, pgs. 38-40)

[85] 35 U.S.C. §287.

[86] *Id.*  Even assuming Muzak is correct that summary judgment of no inducement was proper because Info-Hold did not provide notice of infringement to Muzak, this argument cannot apply to the post-Complaint time period.   The filing of the Complaint in this case clearly provided notice of infringement to Muzak.

[87] *Id.*

apprised of the '374 Patent, and after filing the Complaint against Muzak in this case, Muzak failed to obtain an infringement analysis of the '374 Patent (even after stating that a closer look at the patent would be conducted).  Instead, the evidence demonstrates that Muzak continued with its inducing acts of infringement.[88] Courts have found that facts similar to these establish inducement under the *Global Tech* standard.[89]  Info-Hold respectfully submits that to hold otherwise would render the "willfully blind" standard of proving inducement meaningless as proof of inducement would essentially require proof that the accused had actual knowledge of infringement.

This showing of pre-Complaint knowledge required under §35 U.S.C. 271(b) supports pre-Complaint inducement as well as post-Complaint inducement, which are available under statute as a matter of law.  As set forth in its opening brief, Info-Hold properly identified the elements for an inducement cause of action against both Muzak Holdings LLC and Muzak LLC and offered sufficient evidence to support its claims.  Further, it cited relevant controlling case law, such as *Grokster* and *Global-Tech* to establish the sufficiency of its evidence as to the requisite knowledge.

---

[88] Muzak provided no evidence in its summary judgment briefing (or in its appeal brief) establishing that Muzak stopped the alleged acts of inducement after the filing of the Complaint in this case.

[89] (Doc. 20, pgs. 59-61)

## IV.    CONCLUSION

Based on the foregoing, Appellant respectfully requests relief as set forth in its opening brief and above.

/s/ James L. Kwak
James L. Kwak
Standley Law Group LLP
6300 Riverside Dr.
Dublin, OH  43017
(614) 792-5555

*Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 10th day of June, 2014, I electronically filed the foregoing Non-Confidential Brief of Appellant with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

| | |
|---|---|
| Barry E. Bretschneider | Kevin W. Kirsch |
| Michael E. Anderson | Baker & Hostetler LLP |
| Bridget S. Merritt | Suite 3200 |
| Baker & Hostetler LLP | 312 Walnut Street |
| 1050 Connecticut Avenue, N.W. | Suite 3200 |
| Washington Square, Suite 1100 | Cincinnati, OH 45202-3957 |
| Washington, DC 20036-5304 | |
| | |
| *Counsel for Appellee* | *Counsel for Appellee* |

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

/s/ James L. Kwak
James L. Kwak
STANDLEY LAW GROUP LLP
6300 Riverside Dr.
Dublin, OH 43017
(614) 792-5555

*Counsel for Appellant*

CERTIFICATE OF COMPLIANCE
With Type-Volume Limitation, Typeface Requirements,
And Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
    32(a)(7)(B) because:

        this brief contains 6,997 words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportionally spaced typeface using
        Microsoft Word in 14 Times New Roman.

June 10, 2014                          /s/ James L. Kwak
                                       James L. Kwak